IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| LUCA GUARAGNO, | § | |
|     Petitioner | § | |
| | § | |
| | § | Civil No. 7:09-CV-00187-O |
| v. | § | |
| | § | |
| | § | |
| CARRIE LYNN GUARAGNO | § | |
|     Respondent | § | |

**FINDINGS OF FACT AND RECOMMENDATIONS
ON
PETITIONER'S MOTION FOR ATTORNEY'S FEES AND COSTS**

After this long and bitter litigious thermonuclear world war waged by the litigants on three world fronts, "nothing beside remains"[1] other than the lawyers and their fees.

Before the undersigned by Order of Reference from the District Court (Docket No. 97) is Petitioner's Motion for Attorney's Fees and Costs (Docket No. 79) which was referred to me for hearing, if necessary, and determination or recommendation. Having first reviewed the Motion and Supplement thereto, the Respondent's Response and the Petitioner's Reply, and the Supplemental submissions of the parties, and all of the pleadings and submissions by the parties, and the Court's orders reflected on the Court's docket, together with the evidence and arguments of counsel at the plenary telephonic hearing on the motion conducted on Thursday, October 6, 2010, I make the following findings, conclusions and recommendations.

In June following a plenary hearing in April in this Hague Convention case, the District

---

[1] "...Nothing beside remains. Round the decay Of that colossal wreck, boundless and bare The lone and level sands stretch far away" from "Ozymandias," a poem by Percy Bysshe Shelley, in which the poet's view of the desolation left by the ravages of nature and time on one man's monuments of stone is captured in these lines.

Court entered a judgment (Docket No. 88) incorporating by reference the Court's findings of fact and conclusions of law (Docket Nos. 77 and 87). That judgment had ordered the return of the child to the place the Court had found to be the habitual residence of the child before he was wrongfully removed by his mother to the United States. The mother's appeal to the 5th Circuit was dismissed by agreement of the parties and the matter was returned to this Court on July 16, 2010.

By his motion the father seeks to recoup from the mother $205,658.96 for legal fees and expenses incurred during the course of these proceedings citing the International Child Abduction Remedies Act (ICARA), Title 42 U.S.C. §11607(b) (3) which provides in pertinent part:

"...any court ordering the return of the child pursuant to an action brought under section 4 shall order the Respondent to pay necessary expenses incurred by or on behalf of the Petitioner including court costs, legal fees,..., and transportation costs related to the return of the child, unless the Respondent establishes that such order would be clearly inappropriate."(Emphasis supplied).

Stressing the underlined language of the Act, Respondent asserts that she should not be assessed the attorneys fees and expenses because it "would be clearly inappropriate, and besides the items and amounts sought to be assessed were unnecessary, unreasonable, and improper."

## Determination Standards

The general rule for the assessment of attorneys fees in civil litigation in state and federal trial courts in the United States is the "American Rule" by which each party bears his own attorneys fees.[2] One exception to the American Rule is where there is an applicable statute that allocates the burden to one party or the other.[3] Section 11607 (b) (3) of ICARA is such a statutory provision.

The express words of the statute "shall order" make the assessment mandatory, unless the

---

[2] Alyeska Pipeline Service Co. v. Wilderness Society et al., 421 U.S. 240, 247; 95 S. Ct. 1612; 44 L. Ed. 2d 141 (1975)

[3] Ruckelshaus v. Sierra Club, 463 U.S. 680, 683-84, 103 S. Ct. 3274, 77 L. Ed. 2d 938 (1983)

Respondent clearly establishes that the assessment "would be inappropriate."[4] But the statute also proscribes that the expenses must be "necessary." While the burden of proof of the inappropriateness of the assessment is upon the mother[5], the burden of proof to establish the "necessity"–which implies "reasonableness"-- of the expenses (including the attorney's fees) is upon the father. The categories of allowable expenses is not unlimited as they must be "related" to the "return of the child."

### Fees and Expenses Sought

The father seeks reimbursement for the following categories of expenses totaling $205,658.96, he claims are related to the return of the child:

1. Attorneys fees for his United States based attorneys for their service in this Federal court case-$105,489.25

2. Travel expenses for Plaintiff and several witnesses for two separate trips to the United States for the federal court hearings and trial-$20,209.50

3. Attorneys fees for his Italy based attorneys-$62,812.20

4. Italian expert witness fees-$3,542.27

5. Cost for Italian depositions-$1,114.52

6. Translator trial fees and costs-$3.788.75

7. Interpreter services for translating Italian documents into English-$8,702.47.

In opposition the mother asserts that even though the Court ordered the child returned to Italy an assessment of these expenses and costs against her is "clearly inappropriate" and besides many, if not most, of the fees and expenses were either unnecessary or were excessive (hence,

---

[4] Rydder v. Rydder, 49 F.3d 369, 373 (8th Cir. 1995); Whallon v. Lynn, 356 F. 3d 138 (1st Cir. 2004).

[5] Whallon v. Lynn. at 140.

unreasonable) and insufficiently documented.

As to the issue of inappropriateness, the mother raises four points:

1. that the father "bears much responsibility for the enmity and litigation" among the parties;

2. that assessing the fees and expenses would impair the mother's financial ability to care for her child;

3. that father financially neglected his children; and,

4. that there is still pending an active divorce case in Texas that will address the dissolution of the property of the parties, rendering it more efficient for the state court to handle this issue.

Acts of family violence perpetrated by a parent is an appropriate consideration in assessing fees in a Hague case,[6] as are the removing party's financial status[7] especially in so far as the assessment of the full fees and expenses would severely impact the party's ability to support the remaining children[8] and the failure of the requesting party to pay child support pending the return of the child.[9]

As to the first three items, the mother starts by reasserting a litany of occurrences involving violence allegedly inflicted by the father on the her that were presented to the District Court in the trial. The father then challenges the District Court's conclusion that these acts did not establish a

---

[6] Silverman, *supra*.

[7] Rydder v. Rydder, 49 F.3d 369, 373-74 (8th Cir. 1995); Berendsen v. Nichols, 938 F. Supp. 737, 739 (D. Kan. 1996); Scala v. Pierson, 2010 Minn. App. Unpub. LEXIS 146 (February 23, 2010)

[8] Whallon v. Lynn, *supra* at 141, where it was considered but not as a controlling factor; Berendsen, *supra* at 739.

[9] Whallon, supra at 739; Silverman, supra at 12.

threat to the well being of the child.[10] Then citing the case of *Silverman v. Silverman* from the District of Minnesota,[11] the mother urges that abusive behavior can be considered by the Court in reducing any assessment of fees and costs. Though such apparent abuse did not prevent the *Silverman* court from ordering the children returned to their country of habitual residence, it was **"a consideration"** in the court's determination of the fee issue. Indeed, the abuse coupled with the husband's failure to timely pay the court ordered child support and the mother's financial difficulties convinced that court to deny the attorney's fees in their entirely.

In this case the District Court heard all of the evidence concerning the alleged abuse by the father at the trial and determined as follows:

> "In this case there was evidence of a stormy relationship between the Petitioner and Respondent. Both Petitioner and Respondent were at times verbally abusive of one another. There was evidence that Respondent had suffered serious injuries to her feet as a result of becoming entangled with the Petitioner's car as he backed down the driveway. There was evidence that Respondent had suffered bruising to her arm as a result of a dispute over whether Respondent had Petitioner's wallet. However, there was no evidence that Petitioner ever abused, either physically or psychologically, MJG or that he ever threatened or intended to do so. The facts of the present case stand in stark contrast to those in the two court of appeals cases cited by Respondent."

The Court found that while there is evidence that father harmed the mother in the past and did not treat her appropriately, any possible risk of harm the mother might face if she decided to reconcile with the father did not extend to the child's reconciliation with the father.

I find that the husband's physical abuse of his wife, though not a deciding factor as to the Court's order for the return of the child to Italy, is a significant factor in the determination of the assessment of fees and expenses. The mother was faced with a cruel dilemma, whether to continue to receive the physical and mental abuse from the father of their child, or retreat and suffer the separation from the child. This dilemma was further heightened by the fact that she was pregnant with the couple's second child. Whether the deterioration of the relationship and the increase in the enmity between the two could be laid at the feet of either or both (the issue for the District Court), I

---

[10] Courts Findings of Fact and Conclusions of Law (Docket No. 77) p.14.

[11] 2004 U.S. Dist. LEXIS 18439, 2004 WL 206778 (D. Minn. 2004).

find that a mother should not be required under the threat of monetary sanctions to choose between continued abuse (mental as well as physical) and separation from a young child and/or financial ruin.

As to the mother's claim of financial straits, she claims that the assessment of the fees would prevent her from adequately caring for their own child[12] which resides with her and would render her destitute and needing bankruptcy relief. In support of her claim she submitted her own affidavit.[13] The financial recitations of the mother's affidavit were not challenged by the Petitioner during the hearing except to query what happened to some $200,000.00 in savings the mother had prior to leaving Italy with the child. And counsel for the father highlighted that after the mother's return to the US she had stayed with the children without having to pay rent on the house in Wichita Falls that father claims is his separate property. There was no proof that the mother refused to work or was not seeking work or that she had any current stash of funds or liquid assets capable of paying the fees and expenses sought. While the mother's affidavit in this case is sparse[14] in facts supporting her claim of dire financial straits, I find that she does not have the financial resources available now or reasonably in the near future to adequately provide for the support of her remaining child and herself and to respond **fully** to the financial demands of the father.

Furthermore, even in this litigious atmosphere and time period of rapid acceleration of attorneys fee rates, I find the amount of fees demanded in this case to be "startlingly high," indeed, so high as to shock the conscience of the court. I note that other trial and appellate courts have similarly found fee demands in similar Hague cases not far time removed from this one to be a

---

[12] A child of the couple who was born on US soil after the mother left Italy with the older child.

[13] Affidavit in Opposition (Docket No. 92-2)

[14] **As sparse** as that of the mother in the *Whallon* case where the court of appeals did approve the trial court's reduction of the fee sought by the husband.

"startlingly high sum."[15]

Finally, it is apparent that during the time when the couple was separated from each other, the father did not continue to provide financial support (court-ordered child support or otherwise) for the child either directly or indirectly through the mother or any third party or agency, except to the extent he permitted the mother to continue to reside in the couple's house without payment of rent.[16]

Taking into consideration these three factors, I conclude at an assessment of the **full amount** of the requested fees and expenses against the Respondent would be clearly inappropriate and a reasonable and reasoned reduction of the fees and claimed expenses would be appropriate.

In the light of the mother's filed opposition to the fee motion, I anticipated that each of the elements of the father's demand would be challenged by close examination as to reasonableness or sufficiency of documentation. Instead, the elements were challenged globally. Having reviewed the written submissions of the parties and heard and considered the evidence and arguments of counsel on the reasonableness and necessity of each of the seven elements of the father's demand I find as follows:

Both parties made reference in their arguments before the Court to the use of their families' financial resources to pursue their positions in this and in the divorce cases pending in the United

---

[15] See Silverman, *supra* at ___ where the Court found as follows: "In this case, petitioner requests $54,503.75 as attorney fees and $11,291.30 as court costs. Petitioner requests what the Court believes is a "startlingly high sum" of $65,795.05. *Whallon v. Lynn*, 2003 U.S. Dist.LEXIS 6501, 2003 WL 1906174 (D. Mass. April 18,2003) (noting the requested fee of $64,866.17 was"startlingly high"), *aff'd 356 F.3d 138 (1st Cir.2004)*. The *Whallon* case is the only case that the Court was able to uncover in which a sum even approaching $60,000 was requested. *Berendsen v. Nichols*, 938 F. Supp. 737 (D. Kan. 1996)(reducing award from $11,651.84 to $5,840.15); *Freier v. Freier*, 985 F. Supp. 710 (E.D. Mich.1997) (reducing award from just over $30,000requested to $15,737.07); *Whallon*, 2003 U.S.Dist. LEXIS 6501, 2003 WL 1906174 (requested fee was over $60,000 and court awarded just over $22,000).

[16] I note here that under the Texas community property laws, a wife with a minor children of the marriage has an enforceable right to reside in the husband's separate property residence during the pendency of a divorce proceeding and the husband has no right to oust her from the exercise of that right of possession with the minor children prior to the dissolution of such marriage by a final decree. The community or separate property character of the property is an issue for determination by the divorce court. So the absence of payment of rent is, in my view, of minimal consideration in assessing the mother's financial condition.

States and in Italy.  Since I believe that all parties should be treated equally before the court,  I conclude that it is not appropriate to consider the respective families' families  resources in making the assessment determination in this case.  However, it is clear that the mother has engaged highly qualified and presumably expensive attorneys locally and in New York  to pursue her interests, hardly the acts of a person who is near financial destitution.

Having parsed the Respondent's counsel's fee billing statements, the summaries of Itallian counsel's billing statements, and the travel expense vouchers, translator and expert witness billings, all in the light of the Respondent's counsel's objections and Respondent's Affidavit, I find as follows:

    A.    <u>Attorneys Fees-Texas Counsel</u>.

1. The number of hours reportedly spent by Texas counsel on behalf of Petitioner in this case alone were reasonably and necessarily expended in the light of the obdurateness of Respondent's opposition and maneuvers (pretrial, trial and post trial.)

2. That the hourly rate charged by Texas counsel for her own services was a reasonable rate in consideration of her years of experience, her degree of specialization in the immigration field, and in  line with rates charged in this community at the time the services were rendered.

3. That this case, though not complex as to the basic issues, was nevertheless complex in terms of its proof logistics involving a foreign language and location of parties, witnesses and documents.

4. That Texas counsel's preparation time for multiple proof matters was reasonable, whether the  evidence or witness testimony ultimately proved to be persuasive  or not.

5. That travel time of Texas counsel and her paralegal should not be charged at her standard rate.

6. That Texas counsel's time and efforts on behalf of Petitioner following the Court's

Findings of Fact and Conclusions of Law were reasonably necessary.

7. That Texas counsel's copying cost was not supported as reasonable or necessary.

8. That at Texas counsel's customary billing rate, the fees for Texas counsel's various support staff should be absorbed in counsel's own fee.

B. Travel Expenses.

1. that the $20,209.50 travel expenses (airline tickets, hotel, food, rental cars) sought by Petitioner are excessive, unnecessary and unreasonable in the following respects and should not be allowed:

   a. Travel expenses of Petitioner's parents were unnecessary as their presence in the United States was unnecessary.

   b. Travel expenses of Petitioner's Italian counsel, Manuela Tirini, were unnecessary to the preparation or presentation of petitioner's case.

   c. Travel expenses of Petitioner's witnesses were excessive as their deposition testimony could have been arranged in lieu of the travel.

   d. Rental car charges in excess of three days were not reasonably incurred.

   e. Reasonable travel expenses of the Petitioner for the trial and for the relocation of the child are reasonable and necessarily incurred as follows:

      i. two flights(one for trial, one for pickup of child) at $900.00 each, $1800.00;

      ii. four days/nights per diem (hotel and food) for trial and pickup @ $210.00 per day, $840.00;

      iii. rental car or public transportation DFW Airport to downtown Dallas three days $ 50.00/day, $150.00; and,

      iv. Totaling $2,790.00.

C. Italian Counsel Fees.

1. that the engagement of Italian counsel was reasonable for proper preparation and presentation of Petitioner's case by Texas counsel.

2. that Petitioner's submissions adequately establish the Italian counsel's time and billing rates. However, the exact nature and content of Italian counsel's services are not adequately represented in the written and oral submissions forcing this court to have to guess as to their reasonableness or necessity.

3. Petitioner has failed to meet its burden to establish the reasonableness and necessity of Italian counsel's $62,812.20 fees and expenses.

D. <u>Italian Expert Fees</u>.

1. that the engagement of an Italian expert was reasonable and necessary to proper preparation and presentation of Petitioner's case by Texas counsel.

2. That the expert's fee of $3,542.27 was reasonable.

E. <u>Italian Depositions</u>.

1. that the costs to Petitioner of the Italian depositions in the amount of $1,114.52 was reasonably and necessarily expended.

F. <u>Translator Fees</u>.

1. that the translator fees of $3,788.75, were reasonably and necessarily incurred and adequately documented..

G. <u>Document Transcription Fees</u>.

1. that the document transcription fees of $ $8,702.47 were reasonably and necessarily incurred and adequately documented.

Having concluded that it is **inappropriate** to assess the **full amount** of attorney's fees and costs against the mother, I further find and conclude that it is **appropriate** and in this Court's discretion to reduce the amount of fees and costs to be assessed against the mother. I conclude that the total amount of costs and fees that should be assessed against Respondent is $ 67,000.00. I conclude that it is not necessary for this Court to allocate the reduced amount assessed to any of the particular costs or fees sought by the father. Rather, it is for the Petitioner and his counsel to determine how best to allocate the reduced amount.

I further find Petitioner's counsel is not a party to this case. Therefore I conclude that no

special allocation or order should be made or entered in favor of Texas counsel as a party against Respondent.

I therefore recommend to the District Court that an order be entered on Petitioner's Motion for Attorneys Fees and Costs sustaining it in part and denying it in part and assessing the sum of $67,000.00 against Respondent pursuant to Title 42 U.S.C. §11607(b) (3) and the Hague Convention.

It is so ORDERED this, 19th day of October, 2010.

*Robert K. Roach*
Robert K. Roach
UNITED STATES MAGISTRATE JUDGE

Standard Instruction to Litigants

        A copy of this report containing findings, conclusions, and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).